W. G. BRAY, Administrator of the Estate of ROBERT E. STEPHENS, deceased, Respondent, v. AMERICAN ASSURANCE COMPANY Appellant.

**Springfield Court of Appeals, March 11, 1922.**

1. **INSURANCE: Issue of Misrepresentations as to Health Held for Jury.** In an action on a life policy, whether insured's condition had been misrepresented at the time of the application, *held* for the jury.

2. **TRIAL: Issue Submitted Only When Supported by Evidence.** In an action on a life insurance policy, where there was no evidence that defendant's delay in payment was vexatious, that issue should not have been submitted.

Appeal from the Circuit Court of Dunklin County.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED (*on condition*).

*Orville Zimmerman* and *Jones, Hocker, Sullivan & Angert* for appellant.

(1) Where the uncontradicted and undisputed evidence establishes that a representation made by the insured in his application for a policy of life insurance is false and untrue and that the matter so misrepresented contributed to the insured's death, it is error to submit such issue to the jury, and the trial court should direct a verdict for the insurer. Smith v. Mystic Work-

ers of the World, 196 S. W. 62; Gilmore v. Modern Brotherhood, 186 Mo. App. 445; Carter v. Current River Ry. Co., 156 Mo. 635; Gutherie v. Holmes, 272 Mo. 233; Kazee v. Kansas City Life, 216 S. W. 239; Downs v. Norton, 230 S. W. 103. (2) Damages and attorney's fees cannot be awarded where the evidence discloses that the insurer had reasonable grounds for asserting that there was no liability under the policy. Non Royalty Shoe Co. Phoenix Shoe Co., 210 S. W. 37; Berryman v. Southern Surety Co., 227 S. W. 96.

No brief for respondent.

BRADLEY, J.—Plaintiff, as the administrator of the estate of Robert E. Stephens, deceased, sued to recover on a $1000 old line life insurance policy issued by defendant upon the life of Stephens, and payable at his death to his administrator, executor or assigns. The cause tried before the court and a jury, and plaintiff obtained judgment for $1000 on the policy, and $75 for attorney's fee for vexatious delay. Defendant filed its motion for a new trial, but was overruled, and hence this appeal.

The petition is in the usual form. The answer admits the issuance of the policy, the death of the insured, and the refusal of defendant to pay, and denies liability on the ground of alleged misrepresentations by the insured in the application; that the insured in the application represented that he was then in good health; that he had not consulted any physician during the three preceding years; that he had never suffered form frequent attacks of intestinal colic, and that he had never had any ailment or disease of the kidneys or bladder. It is further charged in this answer that at the time of the application and prior thereto the insured had chornic inflammation of the gall bladder; that he had had frequent attacks of intestinal colic; that he had consulted and been treated by a physician within the three years prior to the date of the application. It is further charged that

the matters so misrepresented contributed to and caused the death of the insured. The reply was a general denial.

Defendant makes two assignments. First, that the court erred, in refusing its instruction in the nature of a demurrer at the close of the whole case; and, second, that the court erred in submitting the issue of vexatious delay.

Application for the policy was made on October 13, 1919; the policy was issued November 10, 1919, and insured died March 28, 1920. There is no claim that any disease or ailment alleged to have been misrepresented contributed to the death of the insured except the alleged diseased condition of the gall bladder. Defendant contends that the evidence conclusively established that the insured died from chronic inflammation of the gall bladder, and that this chronic condition existed at the time of the application and issuance of the policy, and that the court should have directed a verdict for it. Plaintiff introduced the policy and rested.

Defendant's evidence: Dr. C. G. Fisher testified that some two or three years prior to insured's death he was called to see insured at Monette, Ark., and that from the history then given by insured, he diagnosed the trouble as chronic inflammation of the gall bladder; that his experience was that in such severe cases as he found in insured that without surgical relief there is usaully a pus formation which sooner or later breaks itself or empties into the abdominal cavity thereby causing peritonitis.

Dr. Krauss of Memphis, Tenn., testified that he made an autopsy on the body of the insured at Plantersville, Miss., some time after interment; that he found a diseased condition of the gall bladder and surroundings indicating a chronic inflammation of the gall bladder; that he found a perforation in the lower part of the small intestine which in his opinion permitted the escape of the contents of the bowels into the peritoneal cavity, and resulted in peritonitis; that the

underlying cause of the perforation found was the chronic inflammation around the gall bladder; that this inflammation was the underlying cause of death and was responsible for the constriction or spasm in the bowel that forced the perforation; that the immediate cause of death was peritonitis caused by the escape of the bowel content into the peritoneal cavity from the perforation; that the underlying or superinducing cause was the chronic inflammation of the gall bladder. This witness testified that he gave particular attention to the perforation and observed around it in his opinion unmistakable evidence of nature's repair work, which convinced the witness that the perforation was made before death. He stated also that the condition he found with respect to the gall bladder must have existed for at least a year prior to death, and perhaps longer.

Dr. Matlock of Caruth, Mo., testified that he treated insured in August, 1918, visited him three or four times, that in his opionion insured was then suffering from some trouble with the gall bladder. Dr. Martin of Senath, Mo., where insured died, testified that he was called to see insured in the evening prior to the day. of his death; that he made no diagnosis because insured was suffering so severely he could get no history of the case; that insured was suffering from intense pain in the bowels, especially in the upper right hand region known as the epigastric region; that pain in that region is usually caused from gall bladder or liver disturbances. Dr. Tipton of Senath testified that he was called to see insured about two days before his death; that he found insured on the floor of a restaurant suffering intensely with abdominal pains; that insured's abdomen was so distended he could ascertain nothing by feeling and that on account of insured's suffering he did not try to get a history of the case. The physicians mentioned, supra, were given the condition of the gall bladder and surroundings which Dr. Krauss says he found at the autopsy and each gave it as his opinioin that if those conditions existed insured was suffering from gall blad-

der trouble. Defendant introduced several lay witnesses who had known insured for varying lengths of time and these witnesses gave evidence of insured's spells and general sickness which evidence tended to support defendant's contention that insured at the time of the application and issuance of the policy was suffering from gall bladder trouble.

In rebuttal plaintiff offered evidence as follows: Dr. Spidel of Senath testified that he treated insured in August, 1918, the same sickness mentioned by Dr. Matlock; that he diagnosed the trouble as a bilious attack; that the liver, ball bladder and spleen were enlarged, indicating malaria trouble; that he was called to treat insured during his last illness, that he saw insured the day he died, that the trouble was general peritonitis; that at first peritonitis seemed localized in the lower left-hand region somewhat removed from the gall bladder that an escape of the contents of the bowels would cause the condition he found; that peritonitis was the immediate cause of death; that he had never seen a case of peritonitis follow a case of gall stone colic. This witness testified that the perforation in the intestine could have been caused from an ulcer as well as from gall bladder trouble; that a perforation might be caused in the small intestine by a remittent fever. Given the condition alleged to have been found by Dr. Krauss this witness said that if those conditions existed insured was suffering with gall bladder trouble. Dr. Buckley of Senath examined insured for the policy. He testified that he found him in perfect health so far as he could find; that he made the usual test of kidney and urine trouble. Dr. Cantrell of Plantersvile, Miss., testified that he was present at the autopsy and wrote down the findings of Dr. Krauss; that Dr. Krauss when he found the perforation stated that it was due to chronic tuberculosis of the intestines, that this statement was made before the examination of the gall bladder was made. Plaintiff introduced lay witness who gave evidence tending to show that insured was a fairly healthy man, and that they had

no knowledge of, nor had they heard insured complain of or say that he was suffering from gall bladder trouble. Mr. Abernathy of Senath embalmed the body. He testified that in doing so he pierced the stomach and bowels with a long instrument; that he inserted the instrument about twelve inches, and that the intestines would be perforated by the instrument he inserted.

When the evidence in this record is measured by the well known rule applicable when a demurrer is interposed we are of the opinion that the question at issue was for the jury. [Lafferty v. Casualty Co., 229 S. W. (Mo.) 750; Foster v. Metropolitan Life Ins. Co., 233 S. W. (Mo. App.) 499; Burgess v. Ins. Co., 211 S. W. (Mo. App.) 114, 230 S. W. (Mo. 315; Dye v. Ins Co., 227 S. W. (Mo. App.) 222.]

In the Lafferty Case, supra, there was nothing to take the case to the jury, as we read it, except the presumption that the premium had been paid, at this presumption springs from the fact that the policy was delivered. The evidence by the defendant that the premium had not been paid was uncontradicted, yet it was ruled that the trial court could not direct a verdict. There the Supreme Court said: ''The old familiar rule that the jury is the judge of the credibility of witnesses should not be overlooked, which must not be controlled or interfered with by the court. This is true whether the witnesses are introduced by the plaintiff in support of the allegations of the petition or by the defendant in support of the allegations of the answer. In other words, the rule mentioned absolutely bars the right of the court to instruct the jury to find for the plaintiff, even though hundreds of the most reputable witnesses of the community should testify to the facts stated in the petition; even though their testimony should be uncontradicted, the jury must still be the judge of the credibility of the witnesses and the weight to be given to their testimony, and the same would be true as to the testimony of as many other witnesses should they testify to the facts charged in the answer, for the jury alone must be the

judge of their credibility and the weight to be given to their testimony, and in either case the court has absolutely no legal authority to interfere with that absolute prerogative of the jury. [Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505.]''

In Foster v. Metropolitan Life Ins. Co., supra, the St. Louis Court of Appeals following the Lafferty case held that although defendant's evidence of failure to pay the premium was uncontested, the question was still for the jury. In view of these holdings there is no support in the law for defendant's contention that its peremptory request should have been given.

There was no evidence that the refusal to pay was vexatious, and that issue should not have been submitted. If within ten days from the filing of this opinion plaintiff will file a remittitur of $75, the amount of the judgment for vexatious delay, the judgment on the policy will be affirmed, otherwise the cause will be reversed and remanded. *Cox, P. J.,* and *Farrington, J.,* concur.